```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION


THE KNEIBERT CLINIC, LLC,            )
                                     )
                Plaintiff,           )
                                     )
          v.                         )    No.  1:05CV86 FRB
                                     )
RICHARD SMITH, M.D., et al.,         )
                                     )
                Defendants.          )
```

**MEMORANDUM AND ORDER**

Presently pending before the Court is plaintiff Kneibert Clinic, LLC's Motion for New Trial (Docket No. 164). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

This cause of action came before the Court and a jury for trial and on June 17, 2008, the jury rendered a verdict in favor of defendants Dr. Richard Smith and Weatherby Locums Tenens, Inc. (Weatherby), and against plaintiff Kneibert Clinic, LLC (Kneibert or Kneibert Clinic). Judgment was entered on the verdict on June 18, 2008. In the instant Motion for New Trial, plaintiff Kneibert Clinic raises various claims of error, and specifically, that the Court erred in striking certain jurors for cause; that the Court erred in failing to permit plaintiff to place certain arguments and/or issues before the jury; and that the Court erred in its instructions to the jury. Defendants have responded to the motion to which plaintiff has replied. For the following reasons, plaintiff's motion should be denied.

## I. Background

This lawsuit stems from a separate medical malpractice action which was filed in July 2002 by Marilyn and Walter Cravens in the Circuit Court of Butler County, Missouri, against Kneibert Clinic, LLC, in which it was alleged that the Cravens were harmed by the negligence of Kneibert Clinic through its agent, Dr. Richard Smith. Dr. Smith was not a named party to that lawsuit. Pursuant to a Settlement Agreement entered into between the Cravens and Kneibert Clinic in that cause, Judgment was entered by the circuit court on February 9, 2005, in favor of the Cravens and against Kneibert Clinic in the amount of $804,000.00. In conjunction with the Settlement Agreement, the Cravens and Kneibert Clinic also entered into a Supplemental Agreement whereby it was agreed that following the circuit court's entry of Judgment against Kneibert Clinic, the Cravens and Kneibert Clinic would "cooperate and file a suit against Weatherby Locums Tenens, Inc., Dr. Richard Smith and the St. Paul Insurance Company (or subsidiary) as provides professional liability coverage through Weatherby Locums Tenens[.]" The instant lawsuit presently before this Court is that lawsuit which was contemplated by the Supplemental Agreement to be filed by the Cravens and Kneibert Clinic.

The instant cause of action was filed on April 29, 2005, in the Circuit Court of Cape Girardeau, Missouri, by the Cravens and Kneibert Clinic naming Dr. Smith, Weatherby Locums Tenens, Inc., and American Continental Ins. Co. as defendants. The matter

was removed to this Court on June 6, 2005, on the basis of this Court's diversity jurisdiction. Subsequent to removal, all claims against defendant St. Paul/American Continental were dismissed. As a result of this dismissal, the only claim which remained before the Court for resolution was that of plaintiff Kneibert Clinic against defendants Smith and Weatherby seeking indemnification from defendants on the Judgment entered against Kneibert in the Butler County action.

Throughout the pretrial stages of this litigation, plaintiff Kneibert Clinic continually argued that defendants Smith and Weatherby were duty-bound to indemnify Kneibert on the underlying Judgment. Likewise, defendants Smith and Weatherby continually argued that Kneibert's alleged prejudicial conduct in relation to the securing and execution of the Settlement Agreement in the Butler County action and in obtaining Judgment against itself effectively discharged the defendants from any duty to indemnify Kneibert. Various motions for summary judgment were filed in which these arguments were raised. Upon extensive review of Missouri law on the matter, the Court entered a Memorandum and Order on March 28, 2007 (Docket No. 87), wherein it was determined that there existed genuine issues of material fact in dispute as to whether Kneibert Clinic's conduct in securing the Settlement Agreement in the Butler County action and in obtaining Judgment against itself therein materially increased the risk or prejudiced the rights of the defendants as indemnitors such that the

defendants would be discharged from any duty of indemnity. The Court further determined that the question as to whether Kneibert Clinic's conduct excused defendants from indemnification was one to be resolved by a jury. In separate memoranda and orders entered June 27, 2007 (Docket No. 109), and August 13, 2007 (Docket No. 119), the Court reiterated this holding that questions surrounding Kneibert's conduct in securing the Settlement Agreement and in obtaining the Butler County Judgment against itself related to the issue of whether defendants Smith and Weatherby were bound as indemnitors in the action.

On April 30, 2008, a pretrial conference was held at which the Court set the course by which the trial of this cause would proceed. In view of the history of the case, its current posture, and the matters considered to be in dispute, the undersigned determined to bifurcate the trial so that defendants' affirmative defense would be tried first: that is, whether Kneibert's conduct in securing the Settlement Agreement and in obtaining Judgment against itself materially increased the risk to, or prejudiced the rights of, defendants Smith and Weatherby as indemnitors such that defendants were relieved of any duty to indemnify Kneibert. A defendants' verdict on that question would end the case. In the event the jury would find plaintiff's conduct not to have been so prejudicial, the trial would then proceed to the second phase: that is, to determine the underlying medical malpractice action against Dr. Smith and Weatherby. In making this

determination regarding the potential second phase of trial, the undersigned informed the parties that a trial on the merits of the underlying action would be necessary inasmuch as, in the circumstances here, Missouri law prohibited plaintiff from offensively using the Butler County Judgment to collaterally estop the "relitigation," so to speak, of the underlying negligence action. (See Status Conf. Tr., Docket No. 142, at pp. 8-11.) As such, in the event the jury found in the first phase of trial that Kneibert's conduct did not release the defendants from their duty as indemnitors, the matter would proceed against Dr. Smith and Weatherby on the underlying claim of negligence.

On June 16, 2008, the first phase of the bifurcated trial began. On June 17, 2008, the jury returned its verdict in favor of defendants Smith and Weatherby, specifically finding that Kneibert's conduct in entering into the Settlement Agreement and Supplemental Agreement with the Cravens materially increased the risk to, and prejudiced the rights of, Dr. Smith and Weatherby as indemnitors. (Verdict, Docket No. 160.) Judgment on the jury's verdict was entered June 18, 2008, in favor of defendants Smith and Weatherby and against plaintiff Kneibert Clinic on defendants' affirmative defense, and plaintiff's complaint was dismissed with prejudice. (Judgment, Docket No. 162.)

Plaintiff Kneibert Clinic's instant Motion for New Trial followed.

## II.  Discussion

Rule 59 of the Federal Rules of Civil Procedure

> confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict. . . . A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice.

Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996) (citations omitted).

The determination to grant a new trial rests within the discretion of the trial court. Id. (citing Citizens Bank of Batesville, Ark. v. Ford Motor Co., 16 F.3d 965, 967 (8th Cir. 1994)). When addressing a motion for new trial, the Court can "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). Although the Court has discretion to set aside the jury verdict and grant a new trial, it "may not do so merely because it believes that the evidence permitted different inferences or that another result would be more reasonable." Blake v. J.C. Penney Co., 894 F.2d 274, 281 (8th Cir. 1990). Instead, "the [C]ourt must conclude that the jury reached a seriously erroneous result and must state its reasons for this belief." Id.

The Court's ultimate inquiry is whether the first trial resulted in a miscarriage of justice. White, 961 F.2d at 780. The

burden of demonstrating that error warrants a new trial rests with the moving party. Comerio v. Beatrice Foods Co., 616 F. Supp. 1423, 1428 (E.D. Mo. 1985); see also Ricketts v. City of Columbia, Mo., 856 F. Supp. 1337, 1347 (W.D. Mo. 1993) (citing Comerio, 616 F. Supp. at 1428), aff'd, 36 F.3d 775 (8th Cir. 1994); Ramstad v. Lear Siegler Diversified Holdings Corp., 836 F. Supp. 1511, 1514 (D. Minn. 1993).

A. Striking Jurors for Cause

Plaintiff claims that the Court erred when, at defendants' request, it struck two members of the venire panel for cause. Specifically, plaintiff contends that Juror No. 6 ("J.D.") and Juror No. 16 ("J.B.") showed no actual partiality to justify such strikes.

> To challenge a juror for cause, a party must show actual partiality growing out of the nature and circumstances of the case. A district court is required to strike for cause any juror who is shown to lack impartiality or the appearance of impartiality, and absent abuse of discretion, [the court of appeals] will not interfere with the district court's determination of juror qualifications. Moreover, the district court is given broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the demeanor and credibility of prospective jurors.

Walzer v. St. Joseph State Hosp., 231 F.3d 1108, 1112 (8th Cir. 2000) (internal quotation marks and citations omitted).

  1. *Juror #6 – J.D.*

During voir dire examination, venire member J.D.

testified that he had received medical treatment at Kneibert Clinic and had been a patient at the Clinic for "a long time." J.D. also testified that he was currently a patient at Kneibert Clinic, that members of his family likewise were current patients at the Kneibert Clinic, and that he considered the Kneibert Clinic to be his family doctor. Finally, J.D. testified that with his longstanding relationship with Kneibert Clinic, he knew Kneibert Clinic's designated representative at trial, Robert Christian. Given the ongoing close relationship J.D. and his family had with the Clinic and that the matters at issue at trial would directly affect Kneibert Clinic, the Court determined to grant defendants' request to strike J.D. for cause.

Upon review of the voir dire examination and the arguments raised by the parties in relation to the instant motion, the undersigned finds the previous determination to strike J.D. for cause not to be in error. J.D.'s responses during voir dire examination regarding his and his family's ongoing relationship with Kneibert Clinic and level of familiarity with Mr. Christian demonstrated sufficient indicia of bias such that the Court considered J.D. to lack the appearance of impartiality in the circumstances of this case. Cf. Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 572 (8th Cir. 2008) (juror's treatment at clinic ten years prior, juror's second cousin working as physician at clinic, and juror's cousin's spouse being defendant-doctor's brother-in-law did not demonstrate jurors' close association with defendant clinic

or defendant physician such that they could not be impartial). United States v. Perkins, 748 F.2d 1519, 1532 (11th Cir. 1984) (challenge for cause can be sustained for juror's remote relationship with party) (cited approvingly in United States v. Tucker, 137 F.3d 1016, 1029 (8th Cir. 1998)). Accordingly, plaintiff's Motion for New Trial on the basis of the Court's striking of J.D., Juror #6, for cause is denied.

2. *Juror #16 – J.B.*

During voir dire examination, venire member J.B. testified that he had been involved in multiple disputes with insurance companies and currently had claims pending against insurance companies. J.D. emphatically volunteered that he was "anti-insurance company" and further testified to his belief that, upon hearing all of the evidence, he could not be fair to and would rule against insurance companies; although he stated that he would "like to think" that he would not act in such a manner. J.B. then testified during follow up questioning that he could listen to the evidence and sit through deliberations to a verdict. Noting that the role of insurance companies would be a litigated issue in the trial of the cause, and recognizing J.B.'s strong statements regarding his self-described "anti-insurance company" bias, the Court determined to grant defendants' request to strike J.B. for cause.

Upon review of the voir dire examination and the arguments raised by the parties in relation to the instant motion,

the undersigned finds the previous determination to strike J.B. for cause not to be in error. Strong responses from a member of the venire demonstrating a great reluctance to view an issue with impartiality support a court's determination to strike the potential juror for cause. United States v. Nelson, 347 F.3d 701, 711-12 (8th Cir. 2003). J.B.'s emphatic responses during voir dire examination regarding his disfavor of insurance companies and his own questioned ability whether he could be fair in evaluating evidence regarding insurance companies demonstrated sufficient indicia of bias such that the Court considered J.B. to lack the appearance of impartiality in the circumstances of this case. Plaintiff's Motion for New Trial on the basis of the Court's striking of J.B., Juror #16, for cause is therefore denied.

B.  <u>Preventing Disclosure to Jury that Defendants Were Not Bound by Underlying Judgment</u>

As noted above, the Court informed the parties during the pretrial conference that, in the event the first phase of the trial resulted in a favorable verdict for plaintiff, the matter would proceed to the second phase of trial on the merits of the underlying medical malpractice action inasmuch as plaintiff was precluded from the offensive use of collateral estoppel in the circumstances of this case. On the first day of trial, prior to the presentation of evidence, plaintiff requested the Court to take judicial notice of this determination that defendants were not bound by the Butler County Judgment and further requested that plaintiff be permitted to present this evidence to the jury, "that

there is going to be a trial to determine whether they are bound by the judgment[.]"  (Pltf.'s Reply, Docket No. 174, Exh. Trial Tr. Exerpt.)  The Court denied plaintiff's request:

> No, we're not going to go get into that about what's going to happen, because I think we might as well have tried those cases together then, okay.  That was the reason that I chose to do it this way.  And I didn't -- believe me, I gave a lot of thought to this.  I did not do this off the seat of my pants.

(Id.)

In the instant Motion for New Trial, plaintiff argues that the Court erred by excluding evidence of the fact that defendants were not bound by the underlying Butler County Judgment inasmuch as such evidence was relevant to the issue of whether defendants suffered increased risk or prejudice on account of Kneibert's alleged offensive conduct.  Kneibert argues that any purported risk or prejudice to defendants effectively evaporated with the Court's pretrial ruling that plaintiff could not offensively use collateral estoppel in the circumstances of this case.[1]

As is evident from the pretrial conference, the Court

---

[1] If one were to follow this argument to its logical end, then, an indemnitee's prejudicial conduct, no matter how egregious, could *never* increase the risk to or prejudice the rights of indemnitors inasmuch as offended indemnitors would not be bound by wrongfully obtained judgments due to the indemnitee's inability to offensively use collateral estoppel in such circumstances.  An indemnitee could therefore effectively insulate itself from such a defense by engaging in wrongful conduct.

- 11 -

carefully considered the unique nature and circumstances of this protracted litigation and determined to bifurcate the trial such that defendants' affirmative defense to plaintiff's claim of indemnification would be considered separately from the merits of the underlying medical malpractice action. For the Court to have permitted the introduction of the evidence proffered by plaintiff, albeit simple and straightforward on its face, would have opened the door in the first phase of trial to the presentation of additional evidence going to the merits of the underlying medical malpractice action, thus triggering a mini-trial on the substantive issue of medical negligence which was unrelated to the issue to be presently resolved by the jury, that is, the effect of the parties' conduct surrounding plaintiff's securing of the Settlement Agreement. Because of the increased danger of jury confusion and speculation had such evidence been introduced at this first phase of the trial, the Court's determination not to admit such evidence was not error. United States v. Tail, 459 F.3d 854, 861 (8th Cir. 2006); see also Allied Sys., Ltd. v. Teamsters Auto. Transp. Chauffers, Demonstrators & Helpers, Local 604, Affiliated with the Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am., 304 F.3d 785, 791 (8th Cir. 2002) (not error for district court to refuse to admit matters which would confuse jury and waste time by focusing jury's attention on matters not relevant to issue to be resolved).

Nothing submitted by the plaintiff in the instant motion

or supporting memorandum serves to persuade the Court that the ruling made on this matter at the time of trial was incorrect. Plaintiff's Motion for New Trial on the basis of the Court's evidentiary ruling relating to the binding effect of the Butler County Judgment should therefore be denied.

C. <u>Jury Instructions</u>

Plaintiff claims that the Court erred in its instructions to the jury when it failed to give Rejected Instruction No. 15; when it failed to instruct the jury that defendants were bound by the Butler County Judgment; and when it instructed the jury that plaintiff owed a duty to the defendants not to increase the risk or prejudice their rights as indemnitors.

1. *Rejected Instruction No. 15*

The proposed jury instructions in this cause were prepared primarily by the Court with the parties given the opportunity to review the instructions, lodge objections, and propose additional or alternative instructions prior to closing arguments and before the jury retired to consider its verdict. Fed. R. Civ. P. 51(b). One of the instructions initially proposed by the Court, identified here as Rejected Instruction No. 15, instructed as follows:

> Once a demand is made on the indemnitor to defend the litigation against the indemnitee and the demand is refused, the indemnitee may settle the claim in good faith and proceed against the indemnitor. The indemnitee must show that its settlement was reasonable and

made in good faith.

Upon hearing argument from the parties, the Court determined not to give this instruction.

Plaintiff now argues that the instruction was an accurate statement of the law regarding an indemnitor's duty to defend and related obligations of the indemnitee, and thus was a necessary counterpoint to the instructions which were given regarding an indemnitee's duty to protect an indemnitor against liability. As such, plaintiff argues, it was error for the Court not to give the instruction.

District courts have wide discretion in drafting jury instructions. Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 886 (8th Cir. 2006). Subsequent review of instructions "is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Id.

The duty to defend is independent of indemnity. Defendants' refusal to defend plaintiff in the underlying Butler County action had no effect on plaintiff's right to seek indemnification. See Burns & McDonnell Eng'g Co., Inc. v. Torson Constr. Co., Inc., 834 S.W.2d 755, 758 (Mo. Ct. App. 1992). For the Court to give an instruction on the duty to defend in this common law indemnity action would have placed before the jury a matter not at issue and thus could have created confusion and invited speculation as to whether a duty to defend existed and was

or was not breached.  Inasmuch as the issue presented to the jury in the first phase of this trial did not involve a duty to defend, the Court did not err in refusing to give this instruction.

    2.   *Effect of Butler County Judgment; Duty of Indemnitee*

Although couched in terms of instructional error, plaintiff's latter instruction arguments involve the Court's previous substantive determinations that, in the circumstances of this case, defendants are not bound by the Butler County Judgment due to plaintiff being precluded from the offensive use of collateral estoppel (see generally Status Conf. Tr., Docket No. 142); and that plaintiff, as indemnitee, owed a duty to the defendants not to materially increase the risk to, or prejudice the rights of, defendants as indemnitors (see generally id.; Memo. & Order, Docket No. 87).  The undersigned has reviewed the previous rulings on these issues and the reasons set out therefor and finds them not to be in error.  Nothing submitted by the plaintiff in the instant motion or supporting memorandum serves to persuade the Court that its rulings on these matters, made upon extensive and thoughtful review of Missouri law, were incorrect.[2]

---

[2] At no time prior to the jury retiring to consider its verdict did plaintiff raise objections to the instructions on these grounds, despite being given the opportunity to do so.  Fed. R. Civ. P. 51(b), (c).  As such, these particular claims of instructional error could be considered waived and not be further considered by the Court.  See Jones Truck Lines, Inc. v. Full Serv. Leasing Corp., 83 F.3d 253, 256 (8th Cir. 1996); Barton v. Columbia Mut. Cas. Ins. Co., 930 F.2d 1337, 1340-41 (8th Cir. 1991); McKnelly v. Sperry Corp., 642 F.2d 1101, 1108 (8th Cir. 1981).

For all of the foregoing reasons, plaintiff has presented nothing to the Court to cause the Court to question the fairness of the trial and the reliability of the jury's verdict. Nor has plaintiff shown that the jury's verdict resulted in a miscarriage of justice. Accordingly, plaintiff's Motion for New Trial should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Kneibert Clinic, LLC's Motion for New Trial (Docket No. 164) is denied.

*/s/ Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this _17th_ day of March, 2009.